This is 4090722, the Illinois Department of Central Management Services versus the Illinois Labor Relations Board for the appellant. We have Lawrence Weiner and for the appellee, John Schmidt and Melissa Auerbach. Have you split your time and told our bailiff? Yes, we have. Yes, thank you very much. All right, thank you. Mr. Weiner. Good afternoon, your honors. May it please the court. This case involves the Chief Hearing Officer for the Property Tax Appeal Board, otherwise known as PTAP. And just to put it in perspective, there are presently pending over 27,000 appeals before PTAP and they dispose of approximately 10,000 appeals a year. They have nine, what they call technical advisors and appraisal specialists who basically are hearing officers performing the roles of what would ordinarily be ALJs. Above these nine people, I think there's one or two part-time people, but nine full-time people, is the Chief Hearing Officer, Mr. Wagner, who is at issue in this case. He's, in essence, oversees these people, sort of like a, I would characterize it like a funnel. And the staff of PTAP is very limited. You have these, professionally, you have these nine technical advisors and appraisal specialists. And then you have Mr. Wagner, the Chief Hearing Officer. And then you have the Executive Director, and then you have PTAP. The nine technical advisors and appraisal specialists are all members of ASPR. And so, there will be no, if Mr. Wagner is put into the unit, the only person left to supervise these people would basically be the Executive Director of the agency. So, that's the general context. This case, as many others, the plethora of cases that are now pending before this board, involves three issues. It involves the issue of a right to a hearing. It involves the issue of whether Mr. Wagner is managerial. And it involves the issue of whether, even if he isn't managerial, is he a supervisor under the Illinois Public Labor Relations Act. Now, didn't we have this right to hearing issue in another case that you argued not long ago? There are more than one. Several cases and many more on the way, but there are, yes. The last one that we had oral arguments on, the appeal was dismissed, am I correct? There was a, I think we had a settlement with that. Okay. But there are several others pending before, on the issue of a hearing. And Judge McCullough yesterday asked me a question, which I'd like to revisit. What are my feelings about the City of Chicago case? Because basically that dealt with the issue of whether there's going to, you know, what the standards are, both for the legal standards and the standard of review. And it's very significant because, as represented, the PLA was just recently denied in this case. So this is a final determination. I recognize it's another district, and you don't have to obviously follow that, but it's certainly worthy of consideration. Was there any dissent in the City of Chicago case? No. The, and it's important, if you will permit me to just read one paragraph to you, because I think it puts this whole hearing in a good context. The first district held in the City of Chicago case that, quote, while the test to determine whether a hearing is required under the Act is a legal one, involving whether the board had, quote, no reasonable cause, close quote, to believe that a question of representation existed, citation omitted, that test must be applied to and depends upon the sufficiency of the facts presented to the board during its investigation of the representation petition. The court goes on. As such, this court reviews the board's finding that a hearing was not required under the clearly erroneous standard. Under this standard, an agency's decision will not be upheld, only, quote, where, quote, the reviewing court, on their entire record, is left with the definite and firm conviction that a mistake has been committed. We, I believe, the state believes that the court is correctly given the legal standard as to whether there should be a hearing, and that is whether no reasonable cause exists. We, that's part of the rules and regulations. If reasonable cause exists, either as to the appropriateness of the unit or to an exclusion, then there must be the regulations of the Illinois Labor Relations Board that say there must be a hearing before an administrative law judge. So that first part of the opinion we're in consonance with, and it really does involve a consideration of what I would call characterized as the quantum of the evidence and whether it's sufficient or not. Where we would disagree, though, is with respect to the standard of review. In these types of cases, and we believe, we suggest, we submit, that the standard of review should be that de novo. And why do we say that? Because when a hearing is denied, it's akin to a summary decision or a summary judgment proceeding, which are always reviewed de novo by the reviewing courts, both federally and state. If there is a hearing, obviously, then there's an entirely different standard for facts against the manifest weight of the evidence, et cetera, and for clearly erroneous terms of mixed questions of fact and law. But where there's just no hearing provided, and it's really an administrative decision, not a decision of the board at all, not even a decision of an administrative law judge. It's an administrative decision by the board agent. In this case, there's a standard that follows. There's a one-line letter. There's a request for submission. There may or may not be a rule to show cause. If there is, there's a secondary submission. And then a standard form letter. It's one or two sentences. Having reviewed the record, which is only those submissions, I might tell you, there's nothing else because the unions don't respond to it at all, these things. Having reviewed the record, I find that there's no questions of fact or law, and I'm recommending to the executive director that the unit be certified. And the executive director pro forma, instead, says unit certified. So it's different than a hearing record. That is different than the city of Chicago where they apply the clearly erroneous standard. I respectfully submit that under either standard in this case, there is reasonable cause. There's reasonable cause to have a hearing. In other words, it was required under either standard. Why do I say that? Number one, this chief hearing officer, this PTAC chief hearing officer, this is all governed by statute. And the statute is very clear. Just like in the state's attorney's case, the Supreme Court's cases, and the guardian's item cases, if you look at the statute, if you look at the statute, it says that the chairman may assign members or hearing officers to hold hearings. In fact, as a matter of practice, they are assigning the hearing officers to hold the hearings. But when the statute is set forth on page four of my briefing, through page seven, more importantly, in connection, this is section H, in connection with any proceeding, the board or any of its designated hearing officers shall have full authority over the conduct of a hearing and the responsibility for submission of the matter to the board for decision. Again, another statutory provision. Any hearing officer assigned to conduct a hearing on behalf of the board shall be empowered to exercise the full authority. Do those words sound familiar? Because they do.  Full authority of the board with respect to the conduct and control of the proceeding. Full authority of the board. So they are, as a matter of law, under the alternative test, they are managers, as a matter of law. Let me ask you this, Mr. Weiner. I don't have the statute in front of me, but I listened carefully to when you read it. The hearing officer has full authority of the board to conduct a hearing. Correct. That does not necessarily equate with full authority to make a decision on behalf of the board. I agree. But isn't that kind of a difference? I mean, you're saying that that sounds like the State's Attorney case, but in fact the Supreme Court said this, Assistant State's Attorney has the full authority to do the job of the State's Attorney. Well, and that relates, I'll tie it all in. Okay. Thank you, Your Honor. In fact, as set forth in the submissions by Central Management Services, the attorneys, quote, due to the large caseload, ALJ decisions are given, he referred to these hearing officers as ALJs, that's not technically correct. Due to the large caseload, meaning the 10,000 a year, 27,000 more plus pending, decisions are given much deference. In fact, I think, I don't have the statistics on this. It would be interesting, but I think it's probably well above 90 percent or more, if not more, maybe close to 100 percent, are adopted by the board. So as a practical matter, while you're correct, as a practical matter, they are making the decisions for the board. The board signs off on the overwhelming majority, I mean astronomically high majority of those decisions. And I would agree with you. In the real world, that's probably how it does work. But I guess if we could turn it around and we had members of the board on a witness stand and say, and ask them the question, is it true that you completely abdicate your responsibility to these hearing officers that you employ, they would probably sit up straight in their chairs and say, well, of course not. I mean, that's an insult to us. We obviously have the final decision-making authority. I mean, it's a question of how you ask the question or pose the question, I should say. Right. I mean, they're here. We probably could ask them. But the point of this is that I really think that they would answer that in the overwhelming percentage of cases they adopted. Just because of the quantity of cases themselves. It's almost impossible. It's impossible for them to review 10,000 cases a year. As dedicated as they all are. I'd like to fall back on the words, though, of your Honor. In the Bureau of, the Staff Attorneys in the Bureau of Administrative Litigation. And you were talking about this in the fragmentation part, I understand, and as Victor. But here's what your Honor said. The Administrative Law Judges and Hearing Referees preside over administrative hearings and write recommended decisions. The Staff Attorney in the Office of General Counsel, this is page 337 of 388 LNIF 3rd. The Staff Attorney in the Office of General Counsel, quote, rules on, close quote, the recommended decisions of the Administrative Law Judge and the exceptions thereto. While the attorneys in the Bureau of Administrative Litigation are expected to be advocates, the attorneys in the Office of General Counsel are expected to be impartial decision makers. The integrity of the adversary system demands a rigorous separation of those two functions. And I rely upon that because here you do have that very situation, except here you have really, you have a bunch of Administrative Law, I mean of hearing officers who are equivalent of Administrative Law Judges ultimately, were, you know, supervised by this one person. And they are all in the unit. They are all part of the, they have a separate professional RC-10, but they are part of the master agreement and there's individual sections negotiated, particularly with respect to each of the individual units within the AFSCME umbrella. But they are part of the same master agreement. Who's going to supervise these people? Who's going to manage this department? Not the Executive Director and not the Board. There's no one left. There will be no one left to manage and supervise these people. That is not a bargaining unit member. Who's going to exercise all the supervisory functions and managerial functions? There's no one. I mean this is the last one standing. So without going into a whole detail about an analysis of all the supervisory elements, et cetera, which are fully set forth, whether it's managerial as a matter of law under the alternative test or whether it's managerial under the traditional test, what I believe is that there was sufficient evidence under the regulations and standards that are set forth in the City of Chicago case that there was reasonable cause to believe, not that we had to prove our case in order to prove our case because that's what's the essence of really being contended. We didn't have to prove our whole case. All we had to prove was that there was reasonable cause to believe that a question of representation, that a question as to the exclusions existed. And under the IL, Labor Relations Board's own regulations, it's mandatory then to have a hearing on these issues. And that's what we're asking. Thank you. Mr. Schmidt? Thank you, Your Honors, and may it please the Court. My name is John Schmidt. I'm an Assistant Attorney General arguing on behalf of the Illinois Labor Relations Board, and I'm dividing time with Ms. Auerbach, the Union's counsel. The Board believes that this clearly erroneous standard applied in the City of Chicago is appropriate here. And a similar standard does apply in another similar context. This is an investigatory proceeding where the agency involved, the personnel involved, have some expertise. In our brief, we cited this Court's case decision in Webb v. Lustig, which involved the investigatory process of the Department of Human Rights. And in which this Court held that a similar standard, abuse of discretion, would be applied in that situation. Those types of standards, clearly erroneous or abuse of discretion, recognize that the agency has some expertise. And another thing that was recognized in Webb is that this is not a pleading situation. This is an investigatory situation where there is going to be some weighing of evidence. In this case, though, the evidence really wasn't there. There were some statements in a position statement and some statements in a response to a rule to show cause. But there was no evidence, which is something that the Board's regulations do require in response to a rule to show cause. And it's important, the Board believes it's important, to reacquire some sort of preliminary, some sort of substantive preliminary showing. Not necessarily proving the case, but providing some evidentiary and some sound factual basis for it. Because the legislature intended this new card check or dues deduction proceeding to be something that would be conducted expeditiously. It's not something that should be blocked just because the employer inherits, basically, standards from statute to statute for the case law without providing some facts and supporting evidence to back it up. Mr. Weiner also argues that Mr. Wagner is managerial as a matter of law. This is something that was never raised in CMS's submissions, nor were some of the facts that Mr. Weiner talks about like the 10,000 cases, the percentage of cases in which decisions are approved. And it would have been nice if some of that was submitted if CMS believed that this is such a clear case of managerial or supervisory authority. But the managerial as a matter of law argument does not hold water here because to be a manager as a matter of law, the person must stand as a surrogate for some public official or really must be clothed with all of that public official's power and privileges. And as Your Honor pointed out, that's not the case here. The statutory provision, Section 16-185 of the Property Tax Appeal Board says that it's the board that makes decisions. The board's regulations say that it must be a majority of the board. Mr. Weiner tries to argue that, well, Mr. Wagner's recommendations are often adopted. But with this managerial as a matter of law exception, the Illinois Supreme Court looked solely to statutory and common law provisions. It did not look to the actual reality. It did not look to what was in the factual record. And in this case, there's no real common law. The PTAB is a creature of statute. So when you look to the statutes, the statutes say that it's the board itself that has the power over the agency's central function, which is to issue decisions. So that takes us to the managerial as a matter of fact issue. And again, CMS simply, its submissions did not provide facts and evidence that would indicate that Mr. Wagner was a manager as a factual matter. And here, as this court noted in the recent CMS case, what the board really looks to is whether the managerial employee is involved in the direction of a major government enterprise or some unit thereof. In the County of Cook case, which involved attending physicians at a county hospital, that court said that the attending physicians' patient care activities do nothing to run the department, to set the department's goals, to establish and effectuate policies and procedures, to determine hours, wages, schedules, and to create budgets. And similarly, CMS's submissions don't show that Mr. Wagner does those things either. And again, we believe it's important that employers have to at least make some sort of preliminary showing in order to warrant a hearing. That's what the board's regulations call for. Mr. Wagner read some language from that CMS case indicating the necessity of a division between attorneys and ALJs. That was in the context of a situation where the agency's attorneys appeared in handling the agency's own cases before agency ALJs. We don't have that here. PTAB hearing officers handled cases that involve third parties and third parties only. You don't have a situation where PTAB lawyers appear before a PTAB hearing officer. So that language is really not at issue here. Finally, with regard to the supervisory test, in the initial submissions, CMS mentioned a few of the 11 statutory indicia of supervisory authority that Mr. Wagner met, did not provide any specifics really about how he met them. And then in response to the rule to show cause, presented nothing on that issue. And there were several glaring omissions from CMS's submissions with regard to the statutory supervisor test. For one thing, even if somebody meets several of those statutory indicia, they have to perform those tasks with the consistent use of independent judgment. There's nothing in the submissions that establishes that. Also, the alleged supervisor must spend a preponderance of time on supervisory activity. Nothing in the submissions showing that Mr. Wagner spent a preponderance of his time in supervisory activities. And with regard, finally, to Mr. Weiner's point that there will be nobody supervising these people, nobody managing them, if Mr. Wagner is not held to be a statutory manager or supervisor. Under these statutes, a person can have some managerial responsibility and some responsibility that would be considered supervisory without being a statutory manager or a statutory supervisor. The managerial statute, Section 3J of the Act, the managerial provision, says the person must be predominantly engaged in management or executive activities. The supervisory statute, again, has the preponderance requirement. So it's very possible that Mr. Wagner could engage in some activity that would ordinarily be considered supervisor, but would not be a supervisor for the purposes of this Act. And my time is up, so I ask that your honors affirm the executive director decision. Thank you. Thank you, Mr. Schmidt. Ms. Auerbach? May it please the Court, I'm Melissa Auerbach. I represent AFSCME in this matter. In this case, the employer was given two opportunities to file submissions with the Board to convince the Board why in this case you go to hearing. A position statement, which is always asked for in representation cases, and then there was an order to show clause requiring that CMS provide specific facts to support its legal assertion that the employee at issue is supervisory and managerial. And CMS did not respond at all to the request that it tie facts to the supervisory standard when it submitted its rule to show clause. It didn't even address it. And it did address the managerial, but its submissions were factually insufficient to put forth any reasons why there should be a hearing in this case. The CMS, in its response to the order to show clause, and its position statement essentially said, provide facts that would show that the employee here, the qual chief hearing officer, is essentially kind of a lead worker over the other hearing officers, performs administrative functions, assigning cases, helping to prepare the agenda, and provides and reviews decisions to make sure they're in conformance with the statute and applicable legal standards, which would again be something that could be performed by an employee with superior experience, professional expertise. Those are things that the Supreme Court in the city of Freeport said with respect to the fire lieutenants and village of Wheeling is something that makes somebody a lead worker and not a statutory supervisor. And the same standards apply whether it's an attorney, a professional employee, or a fire lieutenant. So the CMS did not even provide enough for there to be a reason to go to hearing. Now, I'm remembering from this other CMS case that we had before, it used to be the policy of the board to automatically have a hearing, correct? I don't know that there was a change in policy. I think what was discussed was that the board has recently begun to certify some cases without having a hearing. I don't know that that wasn't ever done before. Okay. And in the past, has this rule to show cause been used? I think there was one other case before this court on which Your Honor was on the panel that was argued a couple months ago where in that particular case, the board did not issue or the board agent did not issue an order to show cause. There have been a number since then, including this one, where the board agent did issue an order to show cause. So I think there was at least one that was argued here where there was an order to show cause. Thank you. In this one, there was an order to show cause. CMS in its brief refers to both its submissions as position statements, but in fact, its second one, as acknowledged by the attorney handling the case below before the board, was a response to the order to show cause. The order to show cause very specifically requested, said you didn't submit enough yet. You need to give us more specific facts, not just, as Mr. Schmidt said, not just recite the standard in the statute, but give us specific facts to tie those standards to the specific facts of this case. And CMS didn't do that. It gave these vague things which don't show even enough to make a prima facie case of supervisory standard because didn't discuss independent judgment, didn't assert that there was a preponderance of time spent supervising. The assumption must be, therefore, that in fact the employee spends a preponderance of the time performing work. I mean, the work at this agency is to write, for the hearing officers to write these decisions. That's basically the worker function performed. And even though the workers are professional attorneys serving as hearing officers, they're workers for purposes of the labor law who have the right to organize as other professional employees do. I mean, throughout state and local government, there are employees who are in the same bargaining unit and may be under the same collective bargaining agreement with employees who are their subordinates and who they spend some time supervising and may spend some time performing managerial functions with respect to. That's true in the state prison system where you have lieutenants and sergeants and correctional officers all represented even though the officers and sergeants report to the lieutenants. It's true in fire departments where you have lieutenants being represented together with firefighters who are subordinate to them. So the fact that you have hearing officers who in some ways report to a chief hearing officer who reviews the work to ensure it complies with standards is no different than throughout state and local government where you have employees represented for collective bargaining purposes together with another employee who may be superior to them in the line of reporting. But nonetheless, under the Illinois Labor Act, which has narrow definitions of supervisor and manager, broad collective bargaining rights for employees, even though they may spend some time supervising or managing, as the term is used in everyday parlance, it's different than a standard that would be different and that would say if you do any supervising or managing, you don't get to be in a bargaining unit. And I mean, in this agency, the administrative hearing officers, other than this employee, have been represented and have been able to be represented without any problem, even though they are performing hearing officer functions, which this employee at issue is also performing. And in fact, the RC-10 bargaining unit represents solely attorneys, including hearing officers, and administrative law judges in other agencies, some called technical advisors, some called administrative law judges. So, unless there are any questions, we would ask that the board's order be affirmed. Thank you. Thank you, Ms. Horgaff. Mr. Weiner? May it please the Court, as Mr. Schmidt said, we have some sort of preliminary showing. In pages 8 to 11 of our brief, we have all of the facts that were alleged by the CMS Labor Council in support of both supervisory functions and managerial functions. Under either test, we respectfully submit. Under either standard review, we respectfully submit, including clearly erroneous. We contend that there were sufficient quantum of stated fact. Undisputed, I might add. Undisputed stated fact. Because the unions didn't file any response. So all of the facts set forth in this pleading must be deemed to be true. And if you accept them as true, they establish a sufficient basis under managerial and or supervisory for a hearing. For a hearing. That's what we're asking. Thank you. Counsel, in these allegations under managerial, it says, for example, In the present cause of action, the employee in question oversees ALJs who make determinations that speak for the Board as to the employer's policy via the property tax code. What kind of determinations? Well, they're making determinations as to the appropriate rate of taxation and evaluation of taxation. Is that the kind of information that your opposition believes should be included in this? Well, that's included in what? Included in your response to the rule of show cause. Well, yes. If you go down there, you know, you'll see the next sentence. And that is, Chief Hearing Officer Mr. Wagner possesses an exercise of authority to affect the Board's goals and means of achieving those goals. He does so by overseeing the primary bodies of employees charged with achieving these goals. By overseeing said ALJs, Mr. Wagner determines the extent to which the objectives and thus the policies of the Board are met. As such, Mr. Wagner is essentially involved in the direction of this governmental enterprise and broadly affects its mission. I mean, isn't that what this is about? It's almost like it's, they're claiming this is notice pleading and we have fact pleading here? And you need more facts? Well, we're just at the stage now where there's reasonable, we should be only at the stage now where there's reasonable cause as to whether a question of representation or exclusion from the unit exists. Just that a question, reasonable cause. And if you go on, there's a lot of other stuff that is recited, undisputed fact, that I think establishes a sufficient basis for a hearing. Thank you. Thank you, counsel. We'll take this matter under advisement and recess.